IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
00 FEB 24 AM 8:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

EDDIE PAUL BROWN,

    Plaintiff,

vs.                               CASE NO. CV-99-J-0547-S

H. BRUCE WRIGHT, et al.,

    Defendants.

ENTERED
FEB 24 2000

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 20), to which the plaintiff has responded.

### Procedural History

Plaintiff commenced this action on March 8, 1999 by filing a complaint listing causes of action under 42 U.S.C. §§ 1983 and state law claims. The plaintiff states that defendant Wright retaliated against him, in violation of 42 U.S.C. § 1983, because of plaintiff's support of someone other than Dr. Wright for superintendent of the school system (Count I); that he was deprived of a property interest without due process, in violation of 42 U.S.C. § 1983 (Count II); that the defendant Board failed to properly train or supervise defendant Wright, which allowed defendant Wright to violate plaintiff's 42 U.S.C. § 1983 rights (Count III); that the defendants slandered plaintiff and violated his right to privacy under state law (Count IV); and that the actions of the defendants were outrageous, under state law (Count V).



25

## Factual Background

The facts of this case arise out the plaintiff being placed on paid administrative leave on March 21, 1997, pending a criminal investigation. Complaint at ¶ 6; depo. of plaintiff at 11. The plaintiff was employed by the defendant school board in 1974 to work as a plumber. Depo. of plaintiff at 9. In December 1995 the plaintiff was promoted to the position of co-manager of the maintenance department. *Id* at 10.

Due to rumors of wrongdoing, on August 27, 1996, defendant Wright, superintendent of the Jefferson County School System, requested an investigation be undertaken by Bob Nations, Jr., the director of SERVE, a non-profit organization hired to provide framework for the Board to implement a crisis management program. Depo. of Wright at 40-42, 56, 74; Defendants' Exhibits 6 and 7; Plaintiff's memorandum at 4; Plaintiff's Exhibit's 1 and 2. Based on his subsequent investigation, Nations told defendant Wright that he had several concerns which should be investigated further.[1] Depo. of Wright at 109. Defendant Wright contacted the Jefferson County Sheriff's department on September 27, 1996, who in turn contacted the FBI. Depo. of Wright, Vol. I, at 97, 109-110, 112, 118-119; Defendants' Exhibit 8; Plaintiff's Exhibit 6. On March 18, 1997, defendant Wright was given a

---

[1] About the same time, a new contract was entered between Dr. Wright and Nations to extend SERVE's services by one year. Plaintiff's Exhibit 3. The contract was again extended on December 1, 1997 to run through November 30, 1998. Plaintiff's Exhibit 4.

2

preliminary findings report by Nations.[2] Defendants' brief at 3; Defendants' Exhibit 9; Plaintiff's Exhibit 7.

A meeting with the FBI was held, involving plaintiff and two other individuals. Depo. of Plaintiff at 85, depo. of Wright, Vol. I at 165. After this meeting on March 21, 1997, defendant Wright placed the plaintiff and the other two individuals on paid administrative leave while the FBI did a full investigation.[3] Depo. of Wright at 165, 169; Defendants' Exhibit 10; depo. of plaintiff at 111; Plaintiff's Exhibit 10. The plaintiff has received his base salary pay since being placed on leave. Depo. of plaintiff at 13, 97.

At best, the evidence established by the plaintiff which goes to the motive of defendant Wright in placing the plaintiff on leave, is that Dr. Wright testified in deposition that he may have been aware that the plaintiff belonged to a political faction, and assumed he was a friend of Dr. Helton's because he knew Dr. Helton and plaintiff worked closely together. He further stated he knew that political faction was opposed to him. Depo. of Wright, Vol II, at 83-84. The plaintiff alleges his placement on administrative leave was part

---

[2]This report included findings that equipment was purchased and not delivered to the school some type of "kick-back" scheme was evident, that overtime was reported when not actually worked, and that employees were using school property and equipment to perform private contracts. Plaintiff's Exhibit 7. Dr. Wright testified that both plaintiff and the other maintenance manager submitted consistent overtime statements, day after day, which never allowed for a lunch breaks or other personal time. These overtime statements were approved by Dr. Helton. Depo. of Wright, Vol. I, at 153-155. Dr. Wright spoke to Dr. Helton about his concerns, and Dr. Helton suggested raising both plaintiff and Williams' salaries to the director level. *Id.* at 155-156.

[3]Each of the employees placed on leave filed similar suits. *See Williams v. Wright*, CV-99-J-620-S and *Helton v. Wright*, CV-97-P-920-S.

of a "campaign of retaliation" against Dr. Helton, Brown and other opponents of Dr. Wright because of their off duty political activities.[4] Plaintiff's memorandum at 5. However, when asked at his deposition, the plaintiff could only state that he does not know why he was placed on leave because he "hadn't done anything." Depo. of plaintiff at 85. The plaintiff states that Dr. Wright testified that the F.B.I. did not say they would be investigating Dr. Helton and Brown individually and in fact made no specific allegation about any person. Plaintiff's memorandum at 7. However, Dr. Wright states in deposition that he decided to place these three individuals on administrative leave after the F.B.I. gave him a report and asked to interview these three gentlemen. Depo. of Wright at 165.

The plaintiff also alleges he was never informed of his appeal rights. The plaintiff alleges he has requested a hearing before the school board but has not received one. Plaintiff's memorandum at 9; Plaintiff's Exhibit 15 (letter dated February 7, 1999). According to the plaintiff, Dr. Wright was also able, after getting the F.B.I. to investigate his political adversaries, to get the Jefferson County Sheriff's Department to transfer Deputy Allen Farley away form his position as Law Enforcement Liaison to the School Board for

---

[4]Actually, plaintiff's deposition testimony, when asked was:
Q. Other than Dr. Walsh, Jim Hicks, and you said Jackie Davidson. Were there others that you participated in campaign activity for?
A. No, not that I recall.
Depo. of plaintiff at 118. He became involved in these activities through his relationship with Dr. Helton. *Id* at 120. He also alleges that Dr. Wright knew about these activities, "just through general talk, the rumors of Jefferson County." *Id.*

4

criticizing Dr. Wright. Plaintiff's memorandum at 10. Dr. Wright denies doing so. Depo. of Wright, Vol. I, at 218.

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). That party must

demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Cornelius v. Town of Highland Lake*, 880 F.2d 348, 351 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). Summary judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the nonmoving party's case. *Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998).

## Legal Analysis

The court has considered all of the evidence in the light most favorable to the plaintiff and finds that the plaintiff has failed to raise any genuine issues of material fact for a jury to decide.

The plaintiff alleges in Count I of his complaint that he was the victim of retaliation in response to exercising his rights of free speech and freedom of association by politically supporting Leslie B. Helton for the position of superintendent, which is actionable under 42

U.S.C. § 1983.[5] *See* Depo. of plaintiff at 88, 138. The plaintiff has produced no evidence from which a reasonable jury could find in his favor on his retaliation claim.[6]

Under *Bryson v. Waycross*, 888 F.2d 1562 (11th Cir.1989), the court must apply a four-part test to claims of retaliatory discharge for exercising First Amendment rights. *Beckwith v. City of Daytona Beach Shores, Florida*, 58 F.3d 1554, 1563-64 (11th Cr. 1995). These elements are (1) whether the speech involves a matter of public concern; (2) whether the employees interest in speaking outweighs the government's legitimate interest in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the government would have made the same employment decision in the absence of the protected conduct. *Bryson*, 888 F.2d at 1565-66 (citations omitted). *See also Mize v. Jefferson County Board of Education*, 93 F.3d 739, 749 (11th Cir.1996); *Bevill v. UAB Walker College*, 62 F.Supp.2d 1259, 1284 (N.D.Ala.1999).

---

[5]The current superintendent, defendant Wright, was hired in 1992. Before his hiring, Dr. Helton was considered as a candidate for this position. Depo. of Helton at 11; plaintiff's memorandum at 1, 2.

[6]The plaintiff relies on varies statements allegedly made by Dr. Wright during his deposition. For example, the plaintiff alleges that as a staff meeting before Dr. Helton was suspended, "Wright handed out nails to various parties and told those parties that these were the 'nails in his coffin'." Plaintiff's memorandum at 3. Dr. Wright's deposition testimony shows that Dr. Wright testified he was told that "a statement was made that nails were being put in my coffin." Depo. of Wright, Vol. I at 30. In fact, Dr. Wright attributed that statement to Dr. Helton. *Id.* at 31, 32. At any event, the plaintiff's name is not mentioned as connected with this incident.

7

Because the defendants have not argued to the contrary, the court assumes the first two prongs of the above test are met and that the plaintiff's political activities in support of school board candidates is entitled to First Amendment protection. However, the court finds that the third prong of the test is not met.[7] The third and fourth prong of the *Bryson* test are questions designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision. *Beckwith*, 58 F.3d at 1564. To survive the defendants' motion for summary judgment the plaintiff has to "make a showing sufficient to permit a reasonable jury to find that his protected speech was a substantial or motivating factor" in his placement on leave. *Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir.1998). The plaintiff's burden is not a heavy one. Purely circumstantial evidence, taken in the light most favorable to the plaintiff, can create a jury question on the issue of motive. *Beckwith*, 58 F.3d at 1564-1565. However, purely speculative evidence can not satisfy this burden.

The completely speculative nature of the evidence regarding the part plaintiff's political activities may have played in his placement on administrative leave requires this court to find an absence of retaliatory motive on the part of defendant Wright.[8] The plaintiff

---

[7]This court finds from the defendants' submissions that, given the defendants' allegations of wrongdoing on the part of the plaintiff, defendant Wright would have placed the plaintiff on paid administrative leave even if he had never engaged in the political activity in question here.

[8]If this court accepts the allegations of the complaint as true, the best the court can find is that five years before the contested action, the plaintiff supported a candidate for superintendent other than defendant Wright. *See* complaint at ¶¶ 8, 9. Further, defendant Wright stated he did not consider Dr. Helton to be a threat to his position as superintendent. Depo. of Wright, Vol. I, at 28. In fact, Dr. Helton had received no votes from the Board in consideration for the position. Depo. of Helton at 11. Dr. Wright's contract has since been extended twice, through June 2000.

asks this court to find that, after Dr. Wright was elected, he waited almost five years to take revenge against one particular opponent to his appointment as superintendent, then, after convincing the defendant Board to hire Bob Nations under the guise of promoting safer schools, gets Nations to investigate plaintiff and then, working through the Jefferson County Sheriff's Department and the Federal Bureau of Investigation, suspended three people because of their political opposition to him and others.[9] This goes far beyond the one year time gap in *Beckwith* or the eleven month time gap in *Tindal*. *See Beckwith*, 58 F.3d at 1566-1567.[10]

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on Count I of the plaintiff's complaint is due to be granted.

The plaintiff also alleges that the defendants violated his due process rights, actionable under 42 U.S.C. § 1983, by denying him the opportunity for a hearing before placing him on

---

Depo. of Helton at 12; depo. of Wright, Vol. I, at 31. Dr. Kevin Walsh and Jim Hicks, two school board members that plaintiff supported, voted for the second and third extension of Dr. Wright's contract. Depo. of Wright, Vol. I, at 28. Walsh stated he voted for Wright the first time around as well. Depo. of Walsh at 33. However, Dr. Helton points to his support of these two candidates as motivation for Wright's retaliation. Depo. of Helton at 15.

[9] The court notes that the last contract extension for Bob Nations was entered on December 1, 1997, nine months after the plaintiff was suspended. The court finds this slightly undermines the plaintiff's theory that Nations was hired to investigate the plaintiff to lead to his ultimate placement on paid leave. *See* Plaintiff's Exhibit 4.

[10] Here, the plaintiff asks the court to accept that the defendant Wright waited four years before hiring Bob Nations under a pretense so that Nations could undertake an investigation of the plaintiff. Plaintiff's memorandum at 17-18. While some of the evidence presented by plaintiff could be found to support an intent by Dr. Wright to retaliate against Dr. Helton, this court cannot just transfer that theoretical intent of Dr. Wright's to the plaintiff here. *See e.g.*, plaintiff's memorandum at 18, n. 7.

9

administrative leave. The court notes that nowhere does the plaintiff allege that he ever requested a hearing or any other type of opportunity to address the allegations against him. However, assuming that the plaintiff followed applicable administrative procedure to redress what he perceived to be an unjust suspension from his duties, the court still finds that this claim must be dismissed.

In *McKinney v. Pate*, 20 F.3d 1550, 1560-1561 (11th Cir.1994), *cert. denied*, 513 U.S. 1110 (1995), the Eleventh Circuit stated that employment rights, which are non-fundamental state created rights, as opposed to fundamental rights created by the Constitution, are not entitled to substantive due process protection. Because of this, the court only examines plaintiff's claims for procedural due process violations.

The court finds that the plaintiff's income and benefits have not been affected by his placement on administrative leave. The plaintiff is making the same salary and drawing the same benefits as if he was reporting to work everyday. No property interest is implicated where the plaintiff continues to receive the economic benefit of his position. *Harris v. Board of Education of the City of Atlanta,* 105 F.3d 591, 596-597 (11th Cir.1997). *See also Hardiman v. Jefferson County Board of Education*, 709 F.2d 635, 638 (11th Cir.1983). Because the plaintiff does not have a constitutionally protectible property interest in actually performing the duties of his position, the court does not need to determine whether a violation of plaintiff's due process rights occurred when he was placed on paid

administrative leave.[11] *See Gray v. Board of Regents of University System*, 150 F.3d 1347, 1350 (11th Cir.1998), *cert. denied*, __ U.S. ___, 119 S.Ct. 1455, 143 L.Ed.2d 542 (1999).

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on Count II of the plaintiff's complaint is due to be granted.

The plaintiff also alleges that the defendant Board failed to properly train or supervise defendant Wright to prevent him from retaliating against the plaintiff. *See* Defendants' Exhibit 11 (plaintiff's responses to interrogatories at question 9). The plaintiff has offered no evidence in support of this allegation. Because the court has already found, *supra*, that no retaliation occurred, this court finds it does not need to consider whether the alleged retaliation was the result of the defendant board's failure to properly train or supervise defendant Wright.

In consideration of the foregoing, the court finds that the defendant's motion for summary judgment on Count III of the plaintiff's complaint is due to be granted.

While this court has supplemental jurisdiction over plaintiff's state law claims for slander, invasion of privacy and the tort of outrage pursuant to 28 U.S.C. § 1367(a), the court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Because

---

[11] Even if the court found that the plaintiff had a protectible property interest in performing the duties for which he is paid, he still was not deprived of due process. Defendant Wright alleges that he acted pursuant to Policy No. 147.1/213.51 in placing the plaintiff on leave. That policy gives the superintendent the authority to take administrative action in the absence of official board policy or guidelines subject to review by the Board. Defendants' Exhibit 15. The plaintiff had a copy of the grievance procedures sent out in Board Policy 533.7 and review of the by the Board under Policy No. 146. Defendants' Exhibits 14, 16. The plaintiff neither disputes this nor alleges he requested a hearing at any time before February, 1999.

resolution of the remaining counts of the plaintiff's complaint depend on determinations of state law, those claims are best resolved by the Alabama courts. *See Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1352-1353 (11th Cir.1997). The court notes that the plaintiff's state law claims will not be barred by the statutes of limitations in light of the tolling provisions of 28 U.S.C. § 1367(d).

This court, having considered all of the evidence submitted, finds that the plaintiff fails in his burden to set forth specific facts to show that there is a genuine issue of material fact of trial. Rule 56, Federal Rules of Civil Procedure. The evidence here is so one-sided that the defendant must prevail as a matter of law. *Holcombe v. Alabama Dry Dock & Shipbuilding Corp.*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

### Conclusion

The defendants' motion for summary judgment on Counts I, II and III of the complaint is hereby **GRANTED**. The plaintiff's state law claims for slander/invasion of privacy and the tort of outrage are **DISMISSED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** this the ___24___ day of February, 2000.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE